# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ANGELINE WILT,**

**Plaintiff,**

-vs-                                                  **Case No.  6:13-cv-1502-Orl-36KRS**

**DEPOSITORS INSURANCE COMPANY,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR REMAND (Doc. No. 15)** |
| **FILED:** | **October 10, 2013** |

## I.      PROCEDURAL BACKGROUND.

This case comes before the Court on the motion for remand (Doc. No. 15) filed by Plaintiff, Angeline Wilt.  Wilt's motion was based on the notice of removal filed by Defendant, Depositors Insurance Company ("DIC") (Doc. No. 1).

In August 2013, Wilt filed a Complaint against DIC in the Circuit Court of the Eighteenth Judicial Circuit, in and for Brevard County, Florida, as Case Number 05-2013-CA-035905.  Doc. No. 1 at 1; Doc. No. 2.  Wilt alleges claims for uninsured/underinsured motorist benefits ("UM

benefits") and insurance bad faith.  Doc. No. 2.  Wilt served DIC with a Summons and a copy of her Complaint on August 29, 2013.  Doc. No. 1 at 2; Doc. No. 1-1 at 1-3.

On September 27, 2013, DIC filed a Notice of Removal in this Court, alleging that removal was appropriate on the basis of diversity jurisdiction because there was complete diversity of citizenship and the amount in controversy exceeded $75,000.  Doc. No. 1 at 2-4.[1] With its Notice of Removal, DIC filed a copy of the documents filed in the state court action, which included a copy of the Complaint and the attachments thereto.  Doc. No. 1-1 at 4-68.[2]  DIC also filed a copy of a letter dated September 10, 2012, from a DIC claims employee to Plaintiff's counsel.  Doc. No. 1-1 at 83-84.  As DIC described it, this letter memorialized Plaintiff's August 29, 2012 settlement demand of $300,0000.  Doc. No. 1 at 4.

Wilt filed a motion for remand on October 10, 2013.  Doc. No. 15.  With her motion, Wilt asks that her case be remanded to state court because DIC has not met its burden of proving that the amount in controversy exceeds $75,000.  *Id.*  Wilt submitted the following with her motion:

- A letter dated February 16, 2011, from Plaintiff's counsel to her insurance company conveying a $50,000 settlement offer (Ex. A, Doc. No. 15 at 19);[3]

- A letter dated March 13, 2011, from a DIC claims employee to Plaintiff's counsel declining to make a settlement counteroffer and noting that DIC had evaluated Plaintiff's injury claim to be within the $10,000 limits of the insurance policy of the driver with whom Plaintiff was involved in a motor vehicle accident (Ex. A, Doc. No. 15 at 20);

---

[1]Thirty (30) days after August 29, 2013, was September 28, 2013.  Therefore, DIC's Notice of Removal was timely filed pursuant 28 U.S.C. § 1446(b)(1).

[2]The Complaint and exhibits are also in the record separately as Doc. Nos. 2 and 2-1.

[3]Plaintiff's counsel represents that this offer was based on the incorrect amount of benefits available under the relevant insurance policy.  Doc. No. 15 at 11 n. 9.

- A letter dated March 26, 2012, from Plaintiff's counsel to the insurance company for the underinsured motorist with whom Plaintiff was involved in a motor vehicle collision (with a copy to a DIC claims employee) detailing the extent of her injuries and medical bills, estimating her future medical expenses, and making a $10,000 settlement demand to the underinsured motorist's insurance company and a $300,000 settlement demand to DIC (Ex. B, Doc. No. 15 at 21-24);

- A letter dated April 12, 2012, from a DIC claims employee to Plaintiff's counsel declining to extend a settlement offer (Ex. C, Doc. No. 15 at 25);

- A letter dated July 10, 2012, from counsel for DIC to Plaintiff's counsel requesting that Plaintiff participate in an examination under oath and produce certain documents for inspection and copying (Ex. D, Doc. No. 15 at 26-28);

- A letter dated September 10, 2012, from a DIC claims employee to Plaintiff's counsel conveying a $35,000 settlement offer (Ex. E, Doc. No. 15 at 29);

- A fax dated October 11, 2012, confirming Plaintiff's independent medical examination appointment scheduled for October 18, 2012 (Ex. F, Doc. No. 15 at 30);

- A letter dated November 15, 2012, from a DIC claims employee to Plaintiff's counsel reiterating the $35,000 settlement offer (Ex. G, Doc. No. 15 at 31);

- A letter dated May 1, 2013, from DIC's counsel to Plaintiff's counsel confirming pre-suit mediation and noting $275,000 in remaining available insurance proceeds (Ex. H, Doc. No. 15 at 32-33); and

- Letters dated May 21, 2013, July 19, 2013, and September 12, 2013, from a DIC claims employee to Plaintiff's counsel reiterating $35,000 settlement offers (Exs. I-K, Doc. No. 15 at 34-37).

DIC filed its response on October 21, 2013. Doc. No. 19. DIC did not submit any additional evidence with its response, but drew the Court's attention to paragraphs 15 and 20 of Plaintiff's Complaint, as well as a Civil Remedy Notice of Insurer Violations dated May 30, 2013, in which Plaintiff's counsel stated, "It is abundantly clear, from the medical documentation, and the statement under oath provided by Mrs. Wilt, that her claim has a value well in excess of the

remaining available policy limits of $275,000.00 provided by [DIC]." This document was originally filed as Exhibit B to Plaintiff's Complaint. *See* Doc. No. 2-1 at 52-54.

Wilt's motion to remand has been referred to me for issuance of a report and recommendation. Doc. No. 16. It is now ripe for decision.

## II.   RELEVANT FACTS.

### A.   *Allegations of Complaint and Exhibits Thereto.*[4]

Wilt and DIC were parties to an automobile insurance contract. Doc. No. 2 ¶ 3. The relevant insurance policy provided "uninsured/underinsured" motorist coverage, with a policy limit of $300,000. *Id.* ¶¶ 3, 15, 20; Doc. No. 2-1 at 1, 45-51. On June 8, 2010, Wilt was involved in a motor vehicle collision with Sandra Campbell. Doc. No. 2 ¶¶ 4-5. Wilt alleges that Campbell operated her vehicle negligently, thereby causing injuries to Wilt. *Id.* ¶ 5. Campbell was an "underinsured motorist" under Florida law, in that she had liability insurance coverage below the amount of damages sustained by Wilt. *Id.* ¶ 6.

Wilt alleges that, as a result of Campbell's negligence, she was severely, significantly and permanently injured in and about her head, neck, body, limbs and nervous system; has been permanently and significantly scarred and/or disfigured; has incurred a significant and permanent loss of bodily functions; and has suffered an aggravation of a pre-existing condition. She alleges that, as a further result of Campbell's negligence, she has suffered extreme pain and suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, and will so suffer in the future. She alleges that, as a result of her injuries, she

---

[4] Pursuant to Fed. R. Civ. P. 10(c), a copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.

has and will in the future be obligated to pay large sums of money for doctors' bills, hospital bills, and other expenses.  She alleges that she also incurred property damage, including the loss of use of her vehicle and the cost of repairing and/or replacing the vehicle.  She alleges that she has suffered a loss of earnings in the past and has diminished future earning capacity.  She alleges that she has been and will in the future be unable to lead and enjoy a normal life as a result of her injuries.  Doc. No. 2 ¶ 9.

Wilt alleges that DIC has failed and/or refused to provide Wilt with compensation for damages sustained as a result of the accident with Campbell.  Doc. No. 2 ¶ 10.  Wilt alleges that, at all times, DIC knew that its $300,000 policy limits were inadequate to compensate Wilt for the injuries she sustained in the accident with Campbell.  *Id.* ¶ 15.  In her bad faith claim, Wilt alleges that she is entitled to recover the full amount of damages caused by Campbell's negligence, including the amount of damages in excess of the $300,000.00 UM policy limits.  *Id.* ¶ 20.

Prior to filing suit, Wilt offered to settle her claims against DIC for the available policy limits, which were $275,000.  Doc. No. 2-1 at 54; *see also* Doc. No. 1-1 at 83-84.  In addition, approximately three months prior to filing suit, Wilt also submitted a Civil Remedy Notice of Insurer Violations.  That notice stated, "It is abundantly clear, from the medical documentation, and the statement under oath provided by Mrs. Wilt, that her claim has a value well in excess of the remaining available policy limits of $275,000.00 provided by [DIC]."   Doc. No. 2-1 at 54.

B.     *Allegations from Plaintiff's Motion to Remand and Exhibits Thereto.*

Although she submits that the Court should not consider any information beyond that relied upon in DIC's Notice of Removal, Wilt filed evidence supporting her motion to remand. That evidence, which has not been contradicted by DIC, shows that, prior to filing suit, Wilt's

attorney sent a letter to Campbell's insurance company and DIC.  In that letter, Wilt's attorney provided information about Wilt's injuries and medical bills.  He also conveyed a settlement offer of $10,000 to Campell's insurance company (representing Campbell's available policy limits) and $300,000 to DIC (representing Wilt's UM insurance policy limits).  Doc. No.15 at 21-24.[5]  Both prior to and after receiving that letter, DIC refused Wilt's settlement demands and instead repeatedly made settlement offers for amounts significantly less than $75,000, citing concerns about the causation of Wilt's claimed injuries.  *See, e.g.*, Doc. No. 15 at 13 n.13, 20, 29, 34, 36-37. DIC made these settlement offers after reviewing Wilt's medical records, conducting an examination of Wilt under oath, and conducting an independent medical examination of Wilt. Doc. No. 15 at 11-13, 25-31, 34-37.

## III.   APPLICABLE LAW.

Removal jurisdiction exists only where the district court would have original jurisdiction over the action.  28 U.S.C. § 1441(a); *Darden v. Ford Consumer Fin. Co., Inc.*, 200 F.3d 753, 755 (11th Cir. 2000).  Pursuant to 28 U.S.C. § 1332(a), district courts have original jurisdiction over cases in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  Because DIC is seeking to remove this case to federal court, it bears the burden of proving that federal court jurisdiction exists.  *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001)) ("A removing defendant bears the burden of proving proper federal jurisdiction.").

---

[5]Wilt, with DIC's permission, subsequently settled with Campbell's insurer for Campbell's policy limits.  Doc. No. 2 ¶ 7.

In cases in which a plaintiff has not pleaded a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy "can more likely than not be satisfied." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n. 5 (11th Cir. 2001) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000)); *Williams*, 269 F.3d at 1319 (citing *Kirkland*, 243 F.3d at 1281 n.5 and *Tapscott*, 77 F.3d at 1357). In such cases, removal is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. *Williams*, 269 F.3d at 1319. If the jurisdictional amount is not facially apparent from the complaint, the district court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed. *Id.*

For all cases filed after January 6, 2012, the recently amended 28 U.S.C. § 1446(c)(2) controls when the complaint makes a monetary demand. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103, 125 Stat. 758, 762 (2011) (enacted December 7, 2011, and taking effect upon the expiration of the 30-day period following enactment). This section provides:

> (2)    If removal of a civil action is sought on the basis of jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that –
>
>     (A)    the notice of removal may assert the amount in controversy if the initial pleadings seeks –
>
>         (i)    nonmonetary relief; or

(ii)    a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

(B)    removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

In circumstances where the exceptions set forth by § 1446(c)(2)(A)(i)-(ii) apply, the newly amended § 1446 displaces previous Eleventh Circuit case law, which held that, when a state court complaint explicitly seeks an amount of damages less than the jurisdictional amount, removal to federal court is allowed only if the removing defendant can establish to a "legal certainty" that the amount in controversy exceeds the jurisdictional threshold.  *See, e.g.*, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

If the removal petition is brought under the first paragraph of 28 U.S.C. § 1446(b) – that is, within thirty (30) days of the defendant being served with the state court complaint – as it is here, "[t]he substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of evidence standard," and "[d]efendants may introduce their own affidavits, declarations . . ." or "other summary judgment type evidence that may reveal that the amount in controversy is satisfied."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754-55 (11th Cir. 2010) (internal quotations and citations omitted); *see also Williams*, 269 F.3d at 1319; *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (internal citations omitted).  District courts may consider evidence filed after the notice of removal in assessing removal jurisdiction, so long as the subsequently filed evidence is relevant to the state of affairs at the time of removal.  *Sierminski*, 216 F.3d at 949 (citing *Allen v. R&H Oil Co.*, 63 F.3d 1326,

1335 (5th Cir. 1995)).  A defendant may obtain removal of a case to federal court by relying on "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka*, 608 F.3d at 754.  However, removal statutes are strictly construed, and the Eleventh Circuit has made it clear that any doubts about jurisdiction should be resolved in favor of remand. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Burns*, 31 F.3d at 1095)).

## IV.  ANALYSIS.

### A.  *Diversity of Citizenship.*

DIC's Notice of Removal alleges that it is a citizen of Iowa for diversity jurisdiction purposes because it is incorporated and has its principal place of business in Iowa.  Doc. No. 1 at 3.  It also alleges that Wilt is a citizen of Florida for diversity jurisdiction purposes. *Id.*  Wilt has not contested those allegations with her motion to remand.  Therefore, it appears to be undisputed that complete diversity of citizenship exists in this case.

### B.  *Amount in Controversy.*

Wilt's Complaint does not demand a specific amount of monetary relief, instead stating only that "[t]his is an action for damages exceeding the sum of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest."  Doc. No. 2 ¶ 1.  Accordingly, DIC must establish, by a preponderance of the evidence, that the amount in controversy in this case more likely than not exceeds $75,000. *See Pretka*, 608 F.3d at 748, 752 (interpreting complaint that stated it was an action for monetary damages in excess of $15,000.00, exclusive of interest, costs and attorney's

fees, as pleading an indeterminate amount of damages and applying preponderance of evidence

standard); *Kirkland*, 243 F.3d at 1281 n. 5; *Williams*, 269 F.3d at 1319.[6]

     DIC argues that the allegations of Wilt's Complaint, along with the documents attached to

that Complaint establish that the amount in controversy requirement is satisfied.  Specifically, DIC

points to the following: (1) Wilt's allegation in her Complaint that "Defendant knew that its

$300,000 policy limits were inadequate to compensate Plaintiff for the serious and permanent

injuries sustained in the June 8, 2010 collision" (Doc. No. 2 ¶ 15); (2) Wilt's allegation in her

Complaint that "Plaintiff is entitled to recover the full amount of damages caused by the

negligence of the underinsured tortfeasor, including the amount of damages in excess of the

$300,000.00 underinsured motorist policy limits" (*id.* ¶ 20); (3) the statement in Wilt's Civil

Remedy Notice of Insurer Violations (which was attached to Wilt's Complaint) that "[i]t is

abundantly clear, from the medical documentation, and the statement under oath provided by Mrs.

Wilt, that her claim has a value well in excess of the remaining available policy limits of

---

     [6] Wilt argues that her case is not a "situation with unspecified damages in the Complaint" because she has alleged that her damages in this case exceed $15,000 and, therefore, that the more stringent "legal certainty" standard applies.  Doc. No. 15 at 5 and n. 5.  This argument does not comport with Eleventh Circuit precedent, which interprets complaints alleging damages "in excess of $15,000" not to plead a specific amount of damages.  *See Pretka*, 608 F.3d at 748, 752. Regardless, even if the allegations of Wilt's Complaint did amount to a specific demand for damages, the same preponderance of the evidence standard would apply under the newly amended 28 U.S.C. § 1446(c)(2).  Florida law allows plaintiffs to recover damages in excess of the amount demanded in a complaint.  *See, e.g.*, *Speedway Superamerica, LLC v. Dupont*, 933 So. 2d 75, 89 (Fla. 5th Dist. Ct. App. 2006) (affirming jury verdict in excess of $80,000 where complaint asserted that amount in controversy was less than $50,000); *Chasin v. Richey*, 91 So. 2d 811, 812 (Fla. 1957) ("[E]very complaint is considered to pray for general relief . . . and in the ordinary case it is the facts alleged, the issues and proof, and not the form of the prayer for relief, which determine the nature of the relief to be granted.").  Accordingly, the exceptions set forth in 28 U.S.C. § 1446(c)(2)(A)(i)-(ii) apply, and the case may be removed to federal court if DIC establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000.

$275,00.00 provided by [DIC]" (Doc. No. 2-1 at 54); and (4) Wilt's $300,000 settlement demand, which is memorialized in a letter from DIC to Wilt's counsel (Doc. No. 1-1 at 83-84).[7]

I recommend that the Court find that DIC has carried its burden of showing by a preponderance of the evidence that the amount in controversy exceeds $75,000 considering only the claim in Count I of the Complaint. The Eleventh Circuit has instructed that a case is properly removable if it is facially apparent from the complaint that the amount in controversy exceeds $75,000. *Williams*, 269 F.3d at 1319; *Pretka*, 608 F.3d at 754 (citing *Williams*, 269 F.3d at 1319). In determining whether it is facially apparent that the amount in controversy exceeds $75,000, the Court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (quoting *Pretka*, 608 F.3d at 754).

Here, Wilt pursues two causes of action against DIC – one for UM benefits under her insurance policy and one for bad faith in handling her claim for UM benefits. Doc. No. 2. Wilt alleges in her Complaint that DIC knew its $300,000 policy limits were inadequate to compensate her for the injuries she sustained in the accident with Campbell and claims that she is entitled to

---

[7]DIC's Notice of Removal cited only to paragraph 20 of Wilt's Complaint and the letter memorializing the $300,000 settlement demand. Doc. No. 1 at 4. DIC's response to Wilt's motion to remand also cited to paragraph 15 of Wilt's Complaint and Exhibit B to Wilt's Complaint (the Civil Remedy Notice). Doc. No. 19. Wilt's motion to remand argues, without citing to any authority, that "under controlling law . . . it would be inappropriate for the court to consider" anything other than the information cited in DIC's Notice of Removal and that the Court's "consideration should be limited to the documents filed at the time of filing the Notice of Removal." Doc. No. 15 at 11 n. 8. This is not in accord with Eleventh Circuit precedent. As stated above, the Eleventh Circuit has expressly held that defendants may supplement their notices of removal by filing additional evidence in support of a response to a motion to remand, so long as the additional evidence relates to the state of affairs at the time of the notice of removal. *Sierminski*, 216 F.3d at 949 (citing *Allen*, 63 F.3d at 1335).

recover the "full amount of damages caused by the negligence of the underinsured tortfeasor, including the amount of damages in excess of the $300,000.00 underinsured motorist policy limits." Doc. No. 2 ¶¶ 15, 20.  It is reasonable to infer from these allegations (which are part of a Complaint signed by Wilt's attorney as an officer of the Court) that Wilt contends in the first count of the Complaint that she has sustained damages up to the full limits of the DIC policy. Because the UM benefits under the DIC policy far exceed $75,000[8], these allegations alone are sufficient to establish the requisite amount in controversy.  *See Vaughn v. 21st Century Sec. Ins. Co.*, Case No. 3:12cv410/MCR/CJK, 2012 WL 5904323, at *1-2 (N.D. Fla. Oct. 16, 2012) (finding amount in controversy satisfied where plaintiff brought claim for uninsured motorist benefits and bad faith based on complaint allegation that plaintiff's damages "far exceed[ed] the policy limits of the uninsured motorist policy provided by the defendant in this matter" and insurance policy with uninsured motorist limits of $300,000).[9]

---

[8]Wilt's insurance policy (which was attached to the Complaint) has a UM benefit limit of $300,000, Doc. No. 2-1 at 1, 45-51, and Wilt's Complaint affirmatively alleges policy limits of $300,000, Doc. No. 2-1 ¶¶ 15, 20.  The Civil Remedy Notice attached as Exhibit B to Wilt's Complaint (discussed in further detail, below) mentions remaining available UM benefits of $275,000, and a letter from DIC dated May 1, 2013, also mentions available remaining benefits of $275,000.  Doc. No. 2-1 at 54; Doc. No. 15 at 32-33.  Wilt did not submit any evidence suggesting lower available policy limits.  *See AAA Abachman Enters., Inc. v. Stanley Steemer Int'l, Inc.*, 268 F. App'x 864, 866 (11th Cir. 2008) (cited as persuasive authority) ("[Plaintiff] had the opportunity to submit evidence that the value of the rights was $75,000 or less in conjunction with its motion for remand to state court but did not do so.").  Based on the information in the record, it is reasonable to infer that Wilt has remaining policy limits of at least $275,000, which is well in excess of the jurisdictional minimum.

[9]Wilt's motion to remand does not explicitly argue that it is inappropriate for the Court to consider these Complaint allegations in deciding her motion to remand.  However, she does note that paragraph 20 is included in her bad faith claim, which "Defendant has sought to dismiss altogether as being premature and unripe."  Doc. No. 15 at 2.  To the extent Wilt is arguing that the Court cannot rely on paragraphs 15 and 20 of the Complaint in determining that the amount in controversy is satisfied, such an argument is not well-taken.  Wilt cites no authority for the

The Civil Remedy Notice attached to Wilt's Complaint also supports a finding that the amount in controversy exceeds $75,000.[10]  This is further evidence from which it can be reasonably inferred that the amount in controversy exceeds $75,000.  *See AAA Abachman Enters., Inc. v. Stanley Steemer Int'l, Inc.*, 268 F. App'x 864, 865-67 (11th Cir. 2008) (cited as persuasive authority) (finding that district court did not clearly err in finding that value of claims for declaratory relief related to use of trademarks exceeded $75,000 where complaint alleged that "[h]undreds of thousands of dollars have been paid . . . in reliance upon the exclusive license" and pre-suit demand letter from plaintiff's attorney stated that plaintiff would "suffer hundreds of thousands of dollars in damages and potentially millions of dollars of damages" from another company using the trademarks in question).

---

proposition that the Court is precluded from considering complaint allegations simply because they are included in a count that is the subject of a motion to dismiss, and at least one judge of this Court has rejected a similar argument in the past.  *See Bundow v. State Farm Mut. Auto. Ins. Co.*, Case No. 6:08-cv-1049-Orl-28DAB, Doc. No. 18 at 3 n.3 (M.D. Fla. Aug. 27, 2008) (citing *Commercial Credit Corp. v. Lane*, 466 F.Supp. 1326, 1329 (M.D. Fla. 1979)) (noting, in response to argument that bad faith claim should not be included in amount in controversy because it was the subject of a pending motion to dismiss, "the motion to dismiss does not affect the underlying amount in controversy for jurisdictional purposes").  Regardless, even if there is a basis for arguing that the bad faith claim should not be included in the amount in controversy, such would not change the fact that paragraphs 15 and 20 are directly relevant to the amount in controversy with respect to the UM benefits count of Wilt's Complaint.  That is, it is reasonable to infer from paragraphs 15 and 20 of Wilt's Complaint that she is seeking the full amount of UM benefits available to her under her policy with DIC in the first count of her Complaint – which is well in excess of the jurisdictional minimum regardless of whether the bad faith count is considered.

[10]Wilt has not disclaimed this statement or submitted evidence suggesting that her damages have decreased since the filing of the Civil Remedy Notice.

None of the arguments Wilt offers in favor of remand are availing.  First, Wilt argues that the Court should ignore her $300,000 settlement offer because it is merely "memorialized" in a letter from DIC to Wilt's attorney and is, thus, not "the type of reliable evidence to support that the amount in controversy threshold has been met."  Doc. No. 15 at 7-8.  Wilt also points out that this Court has sometimes concluded that settlement offers do not establish the amount in controversy because they may "reflect puffing and posturing."  *Id.* at 8-9.  However, as explained above, it is not necessary to consider the letter memorializing the $300,000 settlement offer to conclude that the amount in controversy is satisfied.[11]

Second, Wilt argues that the case should be remanded because DIC does not itself have a good faith belief that the amount in controversy exceeds $75,000 despite having been provided with significant information about Wilt's claims.  To support this argument, Wilt relies on DIC's multiple settlement offers, all of which have been for substantially less than $75,000.  Doc. No. 15 at 12-15.  This argument is not persuasive.  Indeed, Judge Presnell recently labeled a similar

---

[11]On this point, I note that Wilt has not denied making the $300,000 settlement demand. To the contrary, Wilt has submitted further documentation showing that she has repeatedly offered settle her claims against DIC for the limits available under policy (which are, as discussed above, either $275,000 or $300,000).  One such letter, which was signed by Wilt's attorney and attached as Exhibit B to her motion to remand, gives specific details about her injuries and her medical bills, noting that she has already sustained $58,500 in medical expenses, requires future surgery that will cost in the range of $100,000, and will require at least $5,000 per year for future medical care over her remaining life expectancy of 22.4 years.  The letter then offers to release DIC if DIC will tender the policy limits of $300,000.  Doc. No. 15 at 21-24.  Wilt has not submitted any evidence suggesting that her damages have gone down since the writing of the letter.  *See Abachman*, 268 F. App'x at 866 (noting that plaintiff had opportunity to submit evidence showing that the amount in controversy was $75,000 or less, but failed to do so).  Although it is not necessary to consider this letter to find that the amount in controversy has been satisfied, I note that this is the type of detailed and supported settlement demand that this Court has found to be sufficient to establish the amount in controversy.  *See, e.g.*, *Middleton v. State Farm Mut. Auto. Ins. Co.*, Case No. 3:11-cv-1052-J-37JBT, 2012 WL 230025, at *1, 3 (M.D. Fla. Jan. 25, 2012).

-14-

argument frivolous, noting that "[e]very case on this subject generally instructs that the relevant inquiry is *plaintiff* focused."  *See Gehl v. Direct Transport, Ltd.*, Case No. 6:12-cv-1869-Orl-31DAB, 2013 WL 424300, at *3 (M.D. Fla. Feb. 4, 2013) (emphasis added).  As Judge Corrigan explained in *Lutins v. State Farm Mutual Automobile Insurance Co.*, Case No. 3:10-cv-817-J-99MCR, 2010 WL 6790537, at *2 and n. 3 (M.D. Fla. Nov. 4, 2010), a defendant's settlement offer is not evidence of a low amount in controversy because, as is the case here, such an offer is likely to reflect defendant's belief that the plaintiff may be unable to establish liability.  *See, e.g.*, Doc. No. 15 at 13-14; Doc. No. 2-1 at 55 (noting DIC's position that it questions Wilt's ability to show that all of her injuries were caused by the accident in question).  "As the Eleventh Circuit has explained, 'the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'"  *Lutins*, 2010 WL 6790537, at *2 n. 3 (quoting *Pretka*, 608 F.3d at 751)).

Ultimately, a party "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it."  *Pretka*, 608 F.3d at 754.  For the reasons stated above, I recommend that the Court find that DIC has met its burden to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000 in this case.

**IV.     RECOMMENDATION.**

Because DIC has met its burden to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000 in this case, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Wilt's Motion to Remand.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 5, 2013.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy